UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ETHEL DIANNA GODBOLT,

           Plaintiff,         Civil Action No. 18-10163
                                       Honorable Victoria A. Roberts
                                       Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 13]**

Plaintiff Ethel Godbolt ("Godbolt") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #11, #13), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Godbolt is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Godbolt's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II.     REPORT

### A.     Background

Godbolt was 42 years old at the time of her alleged onset date of June 17, 2014, and at 5'4" tall weighed approximately 220 pounds during the relevant time period. (Tr. 170, 173). She completed high school and one year of college. (Tr. 32, 174). She worked on an assembly line for Chrysler before stopping work, allegedly because of her medical conditions, on June 24, 2014. (Tr. 34, 152-53, 162, 173-74). She now alleges disability primarily as a result of knee, back, and left shoulder pain. (Tr. 49, 173).

After Godbolt's application for DIB was denied at the initial level on January 7, 2016 (Tr. 85-92), she timely requested an administrative hearing, which was held on September 29, 2016, before ALJ Lauren Burstein (Tr. 24-76). Godbolt, who was represented by attorney Andrea Hamm, testified at the hearing, as did vocational expert Toni McFarland. (*Id.*). On March 13, 2017, the ALJ issued a written decision finding that Godbolt is not disabled under the Act. (Tr. 12-20). On November 18, 2017, the Appeals Council denied review. (Tr. 1-5). Godbolt timely filed for judicial review of the final decision on January 15, 2018. (Doc. #1).

The Court has thoroughly reviewed the transcript in this matter, including Godbolt's medical record, Function and Disability Reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B.     The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Godbolt is not disabled under the Act. At Step One, the ALJ found that Godbolt has not engaged in substantial gainful activity since June 17, 2014 (the alleged onset date). (Tr. 14). At Step Two, the ALJ found that she has the severe impairments of osteoarthritis of the knees, lumbar spine impairment, obesity,

3

and left shoulder impairment. (*Id.*). At Step Three, the ALJ found that Godbolt's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (*Id.*).

The ALJ then assessed Godbolt's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: can lift no more than five pounds with both hands; can lift up to five pounds with the right hand and no more than two pounds with the left; can rarely climb ramps and stairs and can never climb ladders, ropes, or scaffolds; can occasionally stoop, but can never kneel, crouch, or crawl; requires the option to sit/stand alternating every twenty minutes; can occasionally reach overhead with the left upper extremity; can occasionally push/pull twenty pounds; can engage in frequent, but not constant, fingering; and should not twist or bend below knee level. (Tr. 14-15).

At Step Four, the ALJ found that Godbolt is not capable of performing any of her past relevant work. (Tr. 18). At Step Five, the ALJ determined, based in part on testimony provided by the vocational expert in response to hypothetical questions, that Godbolt is capable of performing the jobs of document preparer (30,000 jobs nationally), telephone quotation clerk (25,000 jobs), and final assembler (10,000 jobs). (Tr. 19). As a result, the ALJ concluded that Godbolt is not disabled under the Act. (Tr. 20).

**C.  Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d

591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**D.  Analysis**

In her motion for summary judgment, Godbolt argues that: (1) the case must be remanded because the ALJ did not base her RFC finding on a medical opinion; and (2) the ALJ

5

erred in evaluating her subjective complaints. (Doc. #11 at 12-17). Each argument is addressed below.

*1. The ALJ's RFC Finding is Supported by Substantial Evidence*

As set forth above, the ALJ found that Godbolt retains the RFC to perform a reduced range of sedentary work, noting that her allegations of disabling pain are at odds with the objective medical evidence of record, which she thoroughly discussed. (Tr. 14-15, 18). For example, the ALJ noted that an August 2014 MRI of Godbolt's cervical spine showed only mild multilevel degenerative changes and reversal of the normal cervical lordosis. (Tr. 16, 306-07). The ALJ also acknowledged that an MRI of Godbolt's left knee performed in October 2014 showed moderate tricompartmental osteoarthrosis with a large full thickness chondral defect at the medial femoral condyle; a small loose body along the posterior aspect of the distal femur near the intercondylar notch; a degenerative linear signal in the posterior horn of the medial meniscus without discrete tear; inner margin fraying of the lateral meniscus without discrete tear; and semimembranosus tendinosis. (Tr. 16, 311-12). However, the ALJ also noted that, despite Godbolt's reports of pain at a 9/10 level at times (Tr. 16, 18), many physical examinations showed full strength of 5/5 throughout, intact neurological findings, a normal gait with normal heel/toe walking, and an intact grip (Tr. 16-17, 245-46, 255-56, 270-71, 286-87, 291, 296-99, 324-25). Additionally, treatment notes reflect that Godbolt made progress in physical therapy, with notes from October 2016 indicating she had made "significant improvement" in the range of motion, strength, and overall functioning of both her lower back and left leg. (Tr. 353-54). And, as the ALJ noted, Godbolt's treatment records and her testimony reflect that her providers believed she was capable of performing "light duty" work, including carrying up to 10 pounds at waist level. (Tr. 16, 18, 44, 241, 247, 256-58, 287, 299).

In formulating Godbolt's RFC, the ALJ also relied on a June 13, 2016 functional capacity evaluation ("FCE") performed by Mary Monte, an occupational therapist, at the request of Godbolt's treating physician, Shlomo Mandel, M.D. (Tr. 18, 317-21, 325). In the FCE, Ms. Monte determined that Godbolt can lift/carry five pounds occasionally using both hands (three pounds using only her right hand, and two pounds using only her left). (Tr. 319-20). The FCE also showed that Godbolt can sit for 24 minutes and stand for 25 minutes at a time, changing positions. (Tr. 318). Godbolt was able to walk approximately 60 feet for eight repetitions and could push/pull 20 pounds. (Tr. 319). Ms. Monte noted that the range of motion in Godbolt's left shoulder was decreased, but still within functional limits, as was the range of motion in her bilateral elbows, forearms, wrists, and digits. (Tr. 318). Overall, Godbolt had generally good strength in her upper extremities (Tr. 318), and her bilateral prehension was functional (Tr. 320).

Godbolt now argues that the ALJ's RFC finding is not supported by substantial evidence because, in formulating her RFC, the ALJ relied on this FCE, which was performed by an occupational therapist.[1] (Doc. #11 at 12-13). Specifically, Godbolt asserts that the case must be remanded because the record contains "no RFC assessment performed by a physician …." (Doc. #11 at 13). As an initial matter, Godbolt's argument is factually inaccurate, as she fails to acknowledge that Ms. Monte's FCE was electronically signed by Dr. Mandel. (Tr. 321).

---

[1] Godbolt also argues that the ALJ failed to recognize "that at the end of the functional capacity evaluation her pain was an 8 out of 10 … [and] [t]herefore, in order for her to perform at the level she performed for the functional capacity evaluation, she would have increased pain and increased need for medications." (Doc. #11 at 13). Contrary to this assertion, however, the ALJ acknowledged that the FCE "very clearly tested [Godbolt's] physical limitations[.]" (Tr. 18). Moreover, as the Commissioner points out, "a claimant's RFC is not premised on the individual being completely pain-free." (Doc. #13 at 10 (citing *Luxton v. Comm'r of Soc. Sec.*, 2016 WL 6806369, at *12 (E.D. Mich. Oct. 26, 2016)). Thus, despite the fact that Godbolt experienced slightly increased pain (from 7/10 to 8/10) during the FCE – a fact the ALJ expressly considered in fashioning her RFC – the Court finds no error in the ALJ's decision to put stock in the findings of this evaluation.

Moreover, and perhaps more importantly, Godbolt's argument is legally incorrect, as the law is clear that the ALJ is not required to base an RFC upon a physician-determined one. *See Sparrow v. Comm'r of Soc. Sec.*, 2016 WL 1658305, at *7 (E.D. Mich. Mar. 30, 2016). Indeed, *Sparrow* concisely summarized the issue:

> The Commissioner is tasked with establishing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 416.945. However, the Commissioner is not obligated to base this RFC upon a physician's RFC, or upon any particular piece of evidence. "[T]o require the ALJ to base her RFC finding on a physician's opinion, would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 728 (6th Cir. 2013) (quotation omitted). As in *Rudd*, the ALJ may find that the claimant can perform light work even where no doctor corroborates that assessment. *Id*. The ALJ was thus not obligated to draft an RFC assessment which comported with one drafted by a physician, and was instead entitled to create an RFC based on his evaluation of the available medical evidence.

*Id*.; *see also Williams v. Comm'r of Soc. Sec.*, 2017 WL 4541355, at *3 (6th Cir. Mar. 1, 2017) (finding that substantial evidence, which included treatment notes and claimant's daily activities but no medical opinion as to the claimant's limitations, supported an RFC for light work with additional limitations). In this case, where the ALJ considered the relevant medical evidence – including Godbolt's treatment notes, imaging studies, and the results of her FCE – as well as her testimony and reports, the Court finds that the ALJ acted squarely within her authority in formulating Godbolt's RFC. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [her] residual functional capacity.") (internal quotations omitted).

## 2. *The ALJ Properly Evaluated Godbolt's Subjective Complaints*

In her decision, the ALJ found that Godbolt's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 15). In her motion, Godbolt cites to Social Security Ruling ("SSR") 96-7p,[2] 1996 WL 374186 (July 2, 1996), arguing that, in evaluating her subjective complaints, the ALJ failed to consider the side effects of her medications, as well as her persistent efforts to obtain pain relief. (Doc. #11 at 13-17). For the reasons set forth below, the Court disagrees.

To begin with, the Sixth Circuit has held that ALJs are in the best position to evaluate a claimant's subjective complaints because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, such an evaluation will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must evaluate the claimant's symptoms by considering "the entire case record, including the objective medical evidence; an individual's statements about the

---

[2] SSR 96-7p has been superseded by SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). In contrast to the superseded ruling, SSR 16-3p eliminates the use of the term "credibility" from SSA policy, making clear that "subjective symptom evaluation is not an examination of an individual's character." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *2. The new ruling, which applies to decisions or determinations made after March 28, 2016, does not change the two-step regulatory process for evaluating a claimant's subjective complaints or the regulatory factors for consideration of a claimant's symptoms.

intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Soc. Sec. Rul. 16-3p*, 2017 WL 5180304, at *4 (Oct. 25, 2017). In making such an adjudication, a "single, conclusory statement" asserting consideration of the individual's symptoms or reciting the factors in the regulations is insufficient. *Id.* at *10. Instead, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

In her decision, the ALJ properly set forth the two-part regulatory standard for evaluating a claimant's subjective complaints. (Tr. 15). And, in considering Godbolt's subjective allegations, the ALJ discussed her hearing testimony and other statements regarding her symptoms; her medication and other methods used to treat pain; her treatment history; and her daily activities. (Tr. 15-18). All of these were proper considerations. *See* 20 C.F.R. § 404.1529(c)(3). Additionally, the ALJ observed that Godbolt's allegations of disabling pain were inconsistent with the objective medical evidence of record (Tr. 16-18), which was also appropriate. *See* 20 C.F.R. § 404.1529(c)(2).

In challenging the ALJ's evaluation of her subjective complaints, Godbolt advances two arguments. First, she asserts that the ALJ erred in failing to consider the side effects of her multiple medications, including Tylenol No. 3 and Flexeril. (Doc. #11 at 13-15). SSR 16-3p provides that, in evaluating the intensity, persistence, and limiting effects of an individual's symptoms, one of the factors to be considered is the "type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms[.]" *Soc.*

*Sec. Rul. 16-3p*, 2017 WL 5180304, at *7-8. But, the fact that the ALJ did not explicitly discuss medication side effects does not necessarily require remand. *See Kornecky*, 167 F. App'x at 508 (it is well-settled that "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.") (internal quotations omitted); *Ausbrooks v. Astrue*, 2013 WL 3367438, at *19 (E.D. Mich. July 5, 2013) ("An ALJ, however, is not required to explicitly discuss every § 404.1529(c)(3) factor in [the credibility] assessment[.]"). This is particularly true here, where there is no indication in the record that Godbolt complained to her medical providers of significant medication side effects (indeed, Godbolt does not cite to a single instance in which she reported such concerns to her treating physicians).[3] (*See also* Tr. 204 (reporting that her medications cause no side effects)). Thus, the Court finds no error warranting remand in this respect.

Godbolt also argues that the ALJ erred in failing to find that her "persistent efforts to obtain relief from [] her pain or other symptoms serve to enhance [] her credibility …." (Doc. #11 at 15). Specifically, she points to evidence that "she has undergone a plethora of treatment modalities to try to reduce her pain including physical therapy, injections, pain medications, etc." (*Id.* at 17). But, the ALJ discussed Godbolt's treatment history throughout her decision, making clear that she considered these facts in evaluating Godbolt's subjective symptoms. (*E.g.,* Tr. 16 (citing improvement in neck pain after physical therapy and referring to records discussing cortisone injections in left knee), 18 (referencing use of Tylenol 3, Flexeril, Naprosyn, Aleve,

---

[3] Rather, it appears that the sleepiness and drowsiness of which Godbolt complains were the intended effects of at least some of her medications, as she testified that they were prescribed to help her sleep. (Tr. 56, 67).

and Motrin)). Moreover, although not mentioned by Godbolt, the ALJ cited other instances in which Godbolt declined to pursue certain treatment. (Tr. 16 (noting that Godbolt "declined aggressive measures for diagnosis and treatment" of her back impairment)). All told, to the extent Godbolt now argues that the ALJ should have afforded greater weight to her treatment history, she is simply asking the Court to re-weigh the evidence and make a new credibility determination, which is inappropriate. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

In sum, in assessing Godbolt's credibility and the effects of her impairments, the ALJ fairly and properly considered the record evidence, including Godbolt's medical records, statements and activities of daily living. The Court finds no reason to disturb the ALJ's evaluation of Godbolt's subjective complaints because the ALJ observed Godbolt firsthand, and her assessment is supported by substantial evidence in the record. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability.").

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #13**) be **GRANTED**, Godbolt's Motion for Summary Judgment (**Doc. #11**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

| | |
|---|---|
| Dated: September 21, 2018<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 21, 2018.

s/Eddrey O. Butts<br>EDDREY O. BUTTS

Case Manager